PEARSON, J.

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA,[1] *Secretary of Labor, United States Department of Labor*, | ) ) CASE NO. 5:14CV490 |
| Plaintiff, | ) ) |
| v. | ) JUDGE BENITA Y. PEARSON ) ) |
| CPS FOODS, LTD., *et al.*, | ) ) |
| Defendant. | ) **MEMORANDUM OF OPINION** ) **AND ORDER** ) [Resolving ECF Nos. 57, 103] |

Pending before the Court is Plaintiff's[1] Motion for Partial Summary Judgment. ECF No. 57. Defendant Gillian Harris has responded.[2] ECF No. 61. Plaintiff has filed a reply in support of the motion. ECF No. 63. For the following reasons, the Court grants Plaintiff's motion.

## I. Background

Plaintiff, the Secretary of Labor, brings this action against Defendant Gillian Harris for violations of the Fair Labor Standards Act of 1938 ("FLSA"). ECF No. 1. Plaintiff seeks the recovery of unpaid minimum wages, unpaid overtime wages, and an injunction enjoining and

---

[1] Thomas R. Perez was the original Plaintiff. On April 28, 2017, R. Alexander Acosta became the Secretary of Labor. Pursuant to Fed. R. Civ. P. 25(d), Acosta's name has been automatically substituted as a party.

[2] Gary Harris and CPS Foods, LTD. were also Defendants in this matter and they too joined in the opposition to the motion for partial summary judgment. While the motion was pending, however, the case closed as the parties entered into a modified consent order and judgment. ECF No. 88. On September 5, 2017, the Court reinstated this case as to Defendant Gillian Harris only. ECF No. 100.

(5:14CV490)

restraining Gillian Harris from violating the provisions of Sections 6, 11, and 15 of the FLSA.[3] Plaintiff's motion addresses all but three claims in this matter: (1) a minimum wage claim with respect to one employee; (2) an overtime claim with respect to one employee; and (3) a child labor claim. ECF No. 57 at PageID #: 216. For reasons explained below, trial in this matter will be limited to these three claims.

### A. Acquisition of the Brown Derby Roadhouse

Gillian Harris and her father, Gary Harris, took over operation of the Brown Derby Roadhouse restaurant in Akron, Ohio on January 1, 2013. ECF No. 57-6 at PageID #: 330. The restaurant was owned by CPS Foods, Ltd., and, in turn, CPS Foods, Ltd. was owned in full by The International Gold Standard, LLC. ECF No. 56 at PageID #: 205. Gillian Harris was the sole member of The International Gold Standard. Id.

Upon starting at the Brown Derby, Gillian Harris performed numerous functions. By way of example, she liaised with the payroll company, and she had the ability to correct time entries. ECF No. 57-6 at PageID #: 319-21. Her interactions with the payroll company included getting the payroll company to end its practice of charging Brown Derby employees five dollars for each paper check the employee received. Id. at PageID #: 353. Additionally, she supervised the kitchen, the servers, the cooks, and the assistant manager, though her father would also supervise the kitchen sometimes. Id. at PageID #: 332. Gillian Harris would review applications and conduct some interviews, but her father would make the hiring decisions. Id. at PageID #: 333.

---

[3] In his complaint, Plaintiff also requested that the injunction include Sections 7 and 12 of the FLSA, but Plaintiff's motion does not cover violations of these Sections.

(5:14CV490)

Gillian Harris would also make the decision to end an employee's shift early due to slow work flow; however, she did not decide which employee had to end his or her shift, because that was determined by the time at which each individual was scheduled to begin his or her shift. *Id.* at PageID #: 340-41. Finally, Gillian Harris informed the staff and made sure that they followed the requirement that no minors could operate the trash compactor, because she had received word that a former owner faced a fine due to a violation of this regulation. *Id.* at PageID #: 355-56.

Gary Harris testified that he controlled "all the activities of CPS Foods." ECF No. 57-7 at PageID #: 417. He also testified that he was the manager of the Brown Derby. *Id.* at PageID #: 420. Gary Harris claimed that he "managed the back of the house," and Gillian Harris "managed the front of the house." Gillian Harris characterized her role as subordinate to her father. ECF No. 57-6 at PageID #: 334. During a revocation hearing in another matter, however, Gary Harris testified that his daughter had purchased the Brown Derby and he was "helping out" in exchange for the occasional free meal. ECF No. 57-8 at PageID #: 540-41.

**B. The Table Rental Program**

Shortly after taking over the Brown Derby, the employees voted on two possible changes to the compensation system, choosing to implement a table rental system. ECF No. 57-7 at PageID #: 449. Under the table rental system, servers kept all of the tips that they made, but they had to pay a one-dollar-per-table rental fee. *Id.* The servers working under the table program were treated as independent contractors. ECF No. 57-6 at PageID #: 452. Though the employees in the table rental program still had to clock in and out, Gillian Harris testified that she believed that she would go in and change the times in the time-keeping system to reflect zero

3

(5:14CV490)

hours worked so the payroll company did not generate paycheck for those employees. *Id.* at PageID #: 347-48.

Gillian Harris testified that Gary Harris was the driving force behind the table rental program. *Id.* at PageID #: 349. She also testified that she was against the table rental system on practical grounds *Id.* at PageID #: 351. Although Gillian Harris was not a proponent of the table rental program, she collected the fees for the program. *Id.* at PageID #: 347.

Eventually, an attorney informed Gillian Harris that the table rental program was illegal. Gillian Harris found that some servers started to develop unruly attitudes after implementation of the table rental program, so she reached out to John Myers, a lawyer. *Id.* at PageID #: 349. Myers told Gillian Harris that a restaurant in Massachusetts had tried a similar venture, but a court had concluded that the servers did not qualify as independent contractors. *Id.* Once Gillian and Gary Harris learned this, they ended the table rental program. *Id.* at PageID #: 349-50. Gary Harris testified that once he learned that the program violated the law, the Brown Derby "acquiesced and changed." ECF No. 57-7 at PageID #: 452.

**C. Zimmerman Declaration**

Plaintiff has offered a declaration from Dale Zimmerman, an investigator for the U.S. Department of Labor, Wage and Hour Division, as an exhibit to the motion for partial summary judgment. ECF No. 57-2.

Zimmerman investigated CPS Foods and the Brown Derby to determine whether CPS Foods was in compliance with FLSA's minimum wage, overtime, recordkeeping, and child labor provisions. *Id.* at PageID #: 237. This investigation began in May 2013. *Id.* at PageID #: 238.

4

(5:14CV490)

Through his investigation, Zimmerman learned that Gillian and Gary Harris became involved in the operation of CPS Foods, and that a table rental program existed at the Brown Derby from late January 2013 to mid-May 2013. *Id.*

Zimmerman averred that he was able to determine the time period that the table rental program was in effect from a review of the payroll records that showed very few or no hours reported for employees that worked at the Brown Derby during the late January to mid-May 2013 period, followed by records that showed many of those employees working regular hours at the Brown Derby after mid-May 2013. *Id.* Additionally, starting February 2013 many of these employees began reporting no tips, despite reporting significant tips in prior pay periods. *Id.* at PageID #: 239.

For two employees, Zimmerman was able to calculate back wages from reviewing CPS Foods' payroll records, and therefore, did not need to reconstruct the hours worked. *Id.* For those two employees, the back wage violations totaled $402.20. *Id.*

For the remaining minimum wage violations, which totaled $23,444.31, Zimmerman had to performed a more elaborate review. *Id.* There were a few payroll records for servers in the table rental program. *Id.* These records showed the employees receiving a wage of $3.93 per hour, but Zimmerman disregarded these records because both current employees and Gillian and Gary Harris confirmed that the servers in the table rental program did not receive wages. *Id.*

For the majority of the relevant time period, however, the payroll records did not show the number of hours an employee worked. *Id.* at PageID #: 240. In these instances, Zimmerman would reconstruct the hours worked using employee statements and/or averaging hours worked

5

(5:14CV490)

prior to the table rental program's existence. *Id.* When Zimmerman used employee statements to reconstruct the hours worked, the statements were generally consistent with hours those employees had worked in prior pay periods. *Id.* Three former servers offered declarations to support the hours calculations. *See* ECF Nos. 57-9, 57-10, and 57-11. For all servers under the table rental program, Zimmerman used the full minimum wage of $7.25 per hour, because a tip wage was improper. *Id.* Finally, Zimmerman, added in table rental fees to the back wage calculation, and he estimated the table rent at three dollars for every five hours worked. *Id.*

In sum, back wages incurred in 2013 totaled $23,522.90.[4] *Id.*

## II. Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure of materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992).

---

[4] Back wages for 2012 totaled $323.61. ECF No. 57-2 at PageID #: 240. Gillian Harris did not begin working at the Brown Derby until 2013, however, so this amount is not at issue.

6

(5:14CV490)

After the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of material facts in dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A fact is "material" only if its resolution will affect the outcome of the lawsuit. In determining whether a factual issue is "genuine," the court must evaluate whether the evidence could persuade a reasonable factfinder that the non-moving party is entitled to a verdict. *Id.*

To defeat a motion for summary judgment, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The existence of a mere scintilla of evidence in support of the non-moving party's position ordinarily is not sufficient to defeat a motion for summary judgment. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).

### III. Discussion

**A. Violation of Minimum Wage Law**

It is not in dispute that a violation of the minimum wage laws occurred. Indeed, Defendant has stated that "CPS concedes that it unknowingly violated the FLSA minimum wage provisions." ECF No. 61 at PageID #: 611. Moreover, the parties have stipulated that

(5:14CV490)

"[s]ometime in early 2013, CPS Foods began treating certain individuals employed as servers as "independent contractors." During the period of time that this policy was in effect (the duration of the period is disputed by the parties), certain individuals employed as servers were paid no wages by CPS Foods, were permitted to keep the tips they received, and were required to pay CPS Foods a fee of $1 per table, per shift in order to work." ECF No. 56 at PageID #: 206. The parties have also stipulated that "[t]he servers who were treated as independent contractors were "employees" within the meaning of 29 U.S.C. § 203(e)(1)." *Id.* The issues in this case, rather, are the following: (1) whether Gillian Harris is individually liable as an employer; (2) did Gillian Harris violate the recordkeeping provisions of the FLSA; (3) what, if any, damages does she owe; (5) are liquidated damages proper; and (4) whether an injunction is permissible.

### B. Individual Liability

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee ... ." 29 U.S.C. 203(d). This definition allows for the possibility of several "employers" being responsible for FLSA compliance. *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (citing *Falk v. Brennan*, 414 U.S. 190, 195 (1973)). The term "employer" takes on a broader meaning under the FLSA than it does under traditional common law applications. *Id.* (internal quotation omitted). The analysis of whether a party is an employer turns on economic reality. *Id.* (citing *Goldberg v. Whitaker House Cooperative*, 366 U.S. 28, 33 (1961)). In *Dole*, the Sixth Circuit held that the chief corporate officer of a corporation was an employer under the FLSA because he held a significant ownership interest in the corporation and controlled significant day-to-day functions of the

(5:14CV490)

business, such as determining salaries. *Id.* at 966. Similarly, in *U.S. Dept. of Labor v. Cole Enterprises, Inc.*, 62 F.3d 775 (6th Cir. 1995), the Sixth Circuit held that "a corporate officer who has operational control of the corporation's covered enterprise is an employer under FLSA, along with the corporation itself." (citation omitted).

In this case, eight facts qualify Gillian Harris as an employer under the FLSA. First, Gillian Harris was the owner of the restaurant through her ownership of the LLC that owned the restaurant. ECF No. 56 at PageID #: 205. Second, she controlled significant day-to-day functions, including supervising the servers, assistant manager, and the kitchen. ECF No. 57-6 at PageID #: 332. Third, she had the ability to correct time entries on an employee's time sheet. *Id.* At PageID #: 320-2. Fourth, she determined if it was proper to send an employee home due to slow business. *Id.* at PageID #: 340-41. Fifth, she resolved the paycheck fee issue. *Id.* at PageID #: 353. Sixth, she participated in the hiring process, even though she did not make the final decision. *Id.* at PageID #: 333. Seventh, she oversaw compliance with the trash compactor regulation. *Id.* at PageID #: 355-56. Finally, she collected fees from the servers for the table rental program. *Id.* at PageID #: 347.

Gillian Harris tries to avoid individual liability by arguing that she was subordinate to Gary Harris in all matters, and therefore, she was not an employer. ECF No. 61 at PageID #: 611-12. Additionally, she contends that there is no evidence that she was responsible for implementing the table rental program. *Id.* The determination of whether an individual is an employer does not depend on a causal link to the violation–even if it did, the fact that Gillian Harris collected fees for the tables servers worked defeats her argument. Instead, economic

9

(5:14CV490)

reality controls, and the reality is, as detailed above, that Gillian Harris was both heavily involved in the day-to-day management of the Brown Derby, a restaurant that she owned.

### C.  Recordkeeping Provisions

29 U.S.C. § 211(c) requires employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him ... ."  Additionally, 29 C.F.R. § 516.2(a)(7) requires employers to maintain and preserve payroll records that show "[h]ours worked each workday and total hours worked each workweek," and 29 C.F.R. § 516.6(a)(1) requires employers to maintain records that show the daily starting and stopping times of individual employees for at least two years.

Gillian Harris's sworn testimony that she recollected entering zeros in the Brown Derby's timekeeping system suffices to prove a violation of these provisions.  *See* EFC No. 57-6 at PageID #: 348.  Likewise, her testimony is confirmed by Zimmerman's averment in his declaration that payroll records for many of the employees participating in the table rental program showed those employees working few, if any, hours.  ECF No. 57-2 at PageID #: 241. For instance, Gillian Harris testified that payroll records for server Dawn Davis showed zero hours worked between March 18, 2013 and May 28, 2013, and this was likely due to the fact that the table rental program was in place, and her time was being reported as zero hours worked. ECF No. 57-6 at PageID #: 356.

(5:14CV490)

## IV: Remedial Issues

In addition to merits-related argument, the summary judgment briefing also covers three remedial issues: (1) the amount of back wages owed; (2) whether liquidated damages are proper; and (3) whether an injunction is proper. The Court addresses each issue in turn.

### A. Back Wage Calculation

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), *superseded by statute on other grounds* as stated in, *Integrity Staffing Solutions, Inc. v. Busk*, 135 S.Ct. 513 (2014), held that a burden shifting framework applies when computing damages in FLSA cases where the employer has failed to keep accurate records. Under the *Mt. Clemens Pottery* framework, an employee must produce sufficient evidence to show the amount and extent of work the employee performed as a matter of just and reasonable inference. *Id.* at 687. If the employee satisfies this requirement, the burden shifts back to the employer to produce evidence of the precise amount of work performed or evidence to negative the reasonableness of the inference to be drawn from employee's evidence. *Id.* at 687-88. If the employer fails to satisfy its burden, the court may award damages to the employee, even though the damages award lacks precision. *Id.* at 688.

Plaintiff has met his burden under *Mt. Clemens Pottery*. Though Zimmerman's calculation is an estimate, his investigative process of conducting interviews and using the limited records available has allowed Plaintiff to produce evidence that creates a just and reasonable inference. *Cf*. *Chao v. First Nat. Lending Corp.*, 516 F.Supp.2d 895, 901 (N.D.Ohio 2006) (holding that plaintiff's calculation of damages was reasonable; calculation came Wage and Hour Division investigator's interview of individuals, including the defendant, and a review

11

(5:14CV490)

of W-4 forms, employment contracts, employee lists, and personnel documents). Because Defendant became an employer as of January 1, 2013, the back wages calculation is the calculation for 2013, which totals $23,522.90.

Defendant, on the other hand, has failed to offer any evidence to carry her burden. Therefore, Plaintiff's calculation stands.

Although Defendant argues that a tip credit should cut down the amount of unpaid wages, that argument fails for three independent reasons Plaintiff supplied. First, Defendant failed to show that employees were told that they intended to credit tips toward the employer's minimum wage obligation. *See Kilgore v. Outback steak House of Florida, Inc.*, 160 F.3d 294, 298 (6th Cir. 1998) ("[A]n employer must inform the employee that it intends to treat tips as satisfying part of the employer's minimum wage obligation."). Second, the servers did not retain all of the tips they received, because they had to pay table rental fees to the restaurant. *See Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999) (holding that tip credit was improper for shifts where salad mixers were included in pool, because salad mixers did not receive a tip). Third, Defendant failed to pay servers any wage during the existence of the table rental program. *See Roberts v. Apple Sauce, Inc.*, 945 F.Supp.2d 995, 999 (N.D.Ind. 2013) (interpreting 29 U.S.C. § 203(m) to require an employer to pay employee at least $2.13 per hour in order to apply the tip credit in a wage calculation).

### B. Liquidated Damages

29 U.S.C. § 216(b) permits the award of liquidated damages for violations of Sections 206 and 207. If, however, a court finds that a defendant acted in good faith and had reasonable

12

(5:14CV490)

grounds for the belief that its action was not a violation of the FLSA, a court may, at its discretion, award no liquidated damages. 29 U.S.C. § 260. Under this provision, a court may limit or deny liquidated damages if the employer demonstrates "*both* good faith and reasonable grounds for the incorrect classification." Martin v. Indiana Michigan Power Co., 381 F.3d 584 (6th Cir. 2004) (emphasis in original). To establish good faith, "an employer must show that it took affirmative steps to ascertain the Act's requirements, but nonetheless violated its provisions." Id. (quotation omitted). Therefore, an employer that negligently misclassifies an employee has not acted in good faith. Id.

Defendant contends that Plaintiff has not proven that she acted in bad faith. To avoid liquidated damages, however, Defendant is the one that has a burden to meet–so long as Plaintiff has shown liability and some form of damages, burdens Plaintiff has met. To avoid liquidated damages, Defendant must show that she took affirmative steps to determine the legality of the table program *before* classifying the servers as independent contractors. The fact that she consulted an attorney *after* the program went into effect does not absolve her of the initial error in negligently misclassifying the servers.

**C. Injunction**

Plaintiff seeks an injunction enjoining Defendant from violating Sections 6, 7, 11, 12, and 15 of the FLSA. The purported violation of Section 12 (29 U.S.C. § 212) is for conduct related to a minor's use of the trash compactor that is not part of the pending motion. Additionally, the purported violation of Section 7 (29 § U.S.C. 207) is for an overtime claim that is not part of the pending motion. Therefore, the Court construes Plaintiff's motion as a request for an injunction

13

(5:14CV490)

enjoining Defendant from violating Sections 6, 11, and 15 of the FLSA.

29 U.S.C. § 217 gives district courts judges the power to issue injunctions for violations of 29 U.S.C. § 215. Although judges have discretion to issue injunctions under the FLSA, that discretion is not unbridled. *Martin v. Funtime, Inc.*, 963 F.2d 110, 113 (6th Cir. 1992) (citations omitted). When determining whether to issue an injunction, a court should consider the following factors: "(1) the previous conduct of the employer; (2) the current conduct of the employer; and (3) the dependability of the employer's promise for future compliance." *Reich v. Petroleum Sales, Inc.*, 30 F.3d 654, 657 (6th Cir. 1994).

Defendant contends that the issuance of an injunction to follow the law is superfluous, but that is not the case, The Sixth Circuit has held that prospective injunctions place the cost of noncompliance on the employer. *Funtime Inc.*, 963 F.2d at 114.

Although Defendant does not have a history of failing to comply with the FLSA preceding this matter, her violations in this case militate in favor of an injunction. Likewise, the fact that Defendant previously owned and operated a coffee shop (ECF No. 57-6 at PageID #: 351) suggests that she may try her hand at another entrepreneurial endeavor. This raises the concern that she may again be an employer in a position to carry out wage policies. Therefore, an injunction is proper.

Finally, Defendant argues that "if any injunction should be issued it should be against the parties and/or individuals who ultimately made the decision that this court finds were in violation." ECF No. 61 at PageID #: 617-18. Because the Court finds Defendant to be

14

(5:14CV490)

individually liable (as discussed above), an injunction against Defendant is proper based on her own argument.

## V. Conclusion

For the foregoing reasons, the Court grants Plaintiff's Motion for Partial Summary Judgment. Judgment will be entered against Defendant Gillian Harris in an amount of $47,045.80 ($23,522.90 in back wages and an equal amount in liquidated damages). A separate judgment entry will issue. A separate order related to Plaintiff's request for injunctive relief will also issue.

Trial in this matter will be limited to the following claims: (1) a minimum wage claim with respect to one employee, as referenced in Paragraph 5 of Plaintiff's Complaint (ECF No. 1 at PageID #: 2-3); (2) an overtime claim with respect to one employee, as referenced in Paragraph 6 of Plaintiff's Complaint (*id* at PageID #: 3); and (3) a child labor claim, as referenced in Paragraph 8 of Plaintiff's Complaint (*id.* at PageID #: 4).

Additionally, on November 3, 2017, Counsel for Defendant called the Court and requested that the Final Pretrial Conference in this case occur telephonically. The Court construes this as an oral motion to convert the Final Pretrial Conference to a Telephonic Final Pretrial Conference. The Motion is denied and the manner of communicating with the Court inappropriate.[5]

---

[5] Recently filed First Motion for Leave is denied for the reasons included above. ECF No. 103.

15

(5:14CV490)

Unless the remaining claims are resolved prior to, the Final Pretrial Conference and Trial will take place as scheduled.  *See* ECF No. 102.  Lead Counsel for Plaintiff and Defendant must be present, along with their clients and any other with full settlement authority.

IT IS SO ORDERED.

| | |
|---|---|
| November 3, 2017 | */s/ Benita Y. Pearson* |
| Date | Benita Y. Pearson |
| | United States District Judge |